01

02

03

04

05

06                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
07                                  AT SEATTLE

08  ANNE B. BYRD,                        )    CASE NO. C08-1248-RSL
                                         )
09         Plaintiff,                    )
                                         )
10         v.                            )    REPORT AND RECOMMENDATION
                                         )    RE: SOCIAL SECURITY DISABILITY
11  MICHAEL J. ASTRUE, Commissioner      )    APPEAL
    of Social Security,                  )
12                                       )
           Defendant.                    )
13  _____  )

14         Plaintiff Anne B. Byrd proceeds through counsel in her appeal of a final decision of the

15  Commissioner of the Social Security Administration (Commissioner).   The Commissioner

16  denied plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income

17  (SSI) benefits after a hearing before an Administrative Law Judge (ALJ).   Having considered

18  the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court

19  recommends that this matter be REMANDED for further administrative proceedings.

20                        **<u>FACTS AND PROCEDURAL HISTORY</u>**

21         Plaintiff was born on XXXX, 1972.   She completed high school and "[s]ome" college.

22  (AR 469.)   Plaintiff previously worked as a clerk in a convenience store, loss prevention

01  officer, laborer, maid, cashier, cook, cook supervisor, fast food employee, and telemarketer.

02  (AR 83-94.)

03      Plaintiff filed applications for DI and SSI benefits in November 2004, alleging

04  disability beginning August 1, 2002. (AR 30, 62-64.)  Plaintiff remained insured for DI

05  benefits through June 30, 2005 (AR 17, 60) and, therefore, was required to establish disability

06  on or prior to that "date last insured" (DLI) for purposes of her DI claim.  *See* 20 C.F.R. §§

07  404.131, 404.321.    Plaintiff's applications were denied at the initial level and on

08  reconsideration, and she timely requested a hearing.

09      On July 26, 2007, ALJ Verrell Dethloff held a hearing, taking testimony from plaintiff.

10  (AR 466-89.)   On October 25, 2007, the ALJ issued a decision finding plaintiff not disabled.

11  (AR 15-30.)

12      Plaintiff timely appealed.   The Appeals Council denied plaintiff's request for review

13  on July 25, 2008 (AR 5-8), making the ALJ's decision the final decision of the Commissioner.

14  Plaintiff appealed this final decision of the Commissioner to this Court.

15                          **JURISDICTION**

16      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

17                          **DISCUSSION**

18      The Commissioner follows a five-step sequential evaluation process for determining

19  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

20  must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

21  not engaged in substantial gainful activity since the alleged onset date.   At step two, it must be

22  determined whether a claimant suffers from a severe impairment.   The ALJ found plaintiff's

01 degenerative disc disease of the lumbar spine, obesity, anxiety, and bipolar disorder severe.

02 Step three asks whether a claimant's impairments meet or equal a listed impairment.   The ALJ

03 found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

04      If a claimant's impairments do not meet or equal a listing, the Commissioner must

05 assess residual functional capacity (RFC) and determine at step four whether the claimant has

06 demonstrated an inability to perform past relevant work.   The ALJ found plaintiff able to

07 perform at the light exertional level, with the ability to: lift and/or carry twenty pounds

08 occasionally and ten pounds frequently; sit and stand and/or walk for about six hours in an eight

09 hour day; frequently climb ramps/stairs; occasionally climb a ladder/rope/scaffold; frequently

10 balance, and occasionally stoop, kneel, crouch, and crawl.   He found that she should avoid

11 concentrated exposure to hazards (machinery, heights, etc.).   The ALJ further found that

12 plaintiff could: perform simple, repetitive tasks for periods of two hours or more; interact

13 appropriately with a supervisor and a few co-workers; work in a setting with brief and

14 superficial contact with the public; and adapt to the normal stresses of a competitive work

15 environment where her job duties were clearly defined and not subject to frequent change.

16 With that assessment, the ALJ found plaintiff able to perform her past relevant work as a motel

17 maid or cleaner, as such work is generally performed.

18      If a claimant demonstrates an inability to perform past relevant work, the burden shifts

19 to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

20 an adjustment to work that exists in significant levels in the national economy. Although

21 finding plaintiff capable of performing past relevant work, the ALJ also made an alternative

22 finding at step five, utilizing the Medical-Vocational Guidelines as a "framework" for his

01 decision, without the assistance of a vocational expert (VE).

02     This Court's review of the ALJ's decision is limited to whether the decision is in

03 accordance with the law and the findings supported by substantial evidence in the record as a

04 whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means

05 more than a scintilla, but less than a preponderance; it means such relevant evidence as a

06 reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881

07 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which

08 supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278

09 F.3d 947, 954 (9th Cir. 2002).

10     Plaintiff asserts numerous errors in the ALJ's decision, including errors at steps two,

11 four, and five, as well as in the ALJ's assessment of physicians' opinions, her credibility, lay

12 witness testimony, and with respect to a particular exhibit. She requests remand for further

13 administrative proceedings. The Commissioner argues that the ALJ's decision is supported by

14 substantial evidence and should be affirmed. For the reasons described below, the Court finds

15 that this matter should be remanded for further administrative proceedings.

16 Step Two

17     At step two, a claimant must make a threshold showing that her medically determinable

18 impairments significantly limit her ability to perform basic work activities. *See Bowen v.*

19 *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work

20 activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§

21 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not

22 severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

01 effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

02 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis

03 screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54).

04 An ALJ is also required to consider the "combined effect" of an individual's impairments in

05 considering severity. *Id.*

06 Plaintiff avers that treating physicians Dr. Meera Mohanakumar and Dr. Allison Cole

07 diagnosed her with chronic pain syndrome. She points to office visit notes, dated March

08 through July 2007, in which these physicians listed "chronic pain syndrome" as one of

09 plaintiff's "Chronic Problems." (AR 269-84.) Plaintiff argues that the ALJ erred in failing to

10 recognize this impairment.

11 The Commissioner asserts that Drs. Mohanakumar and Cole, as well as other

12 Community Health doctors, consistently assessed plaintiff with chronic back pain as a

13 symptom specifically related to her degenerative disc disease of the lumbar spine. (AR

14 221-67, 271-372.) He asserts an absence of evidence that either physician considered

15 plaintiff's perception of pain as a separate mental impairment and argues that the ALJ properly

16 declined to mislabel plaintiff's pain symptoms as such. The Commissioner notes that the

17 mention of chronic pain syndrome occurred well after plaintiff's June 30, 2005 DLI. Finally,

18 the Commissioner avers that any error would be no more than harmless given that the ALJ fully

19 and properly considered plaintiff's subjective complaints of pain in his evaluation. *See Stout*

20 *v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (recognizing

21 application of harmless error in Social Security context where a "mistake was nonprejudicial to

22 the claimant or irrelevant to the ALJ's ultimate disability conclusion.")

01      In reply, plaintiff reads the Commissioner's argument as suggesting that chronic pain

02 syndrome is only a symptom rather than a medically determinable impairment. She points to

03 the recognition of disorders based on symptoms. *See*, *e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1,

04 § 12.07 ("Somatoform disorders: Physical symptoms for which there are no demonstrable

05 organic findings or known physiological mechanisms.") Plaintiff also describes the

06 Commissioner's response as proffering improper post hoc rationalizations. *See*, *e.g.*, *Connett*

07 *v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (district court erred in affirming based on

08 evidence the ALJ did not discuss).

09      The Commissioner does not argue that chronic pain syndrome is not a medically

10 determinable impairment. Instead, the Commissioner correctly describes the medical records

11 as corresponding plaintiff's chronic pain with her degenerative disc disease. For example, in

12 May 2006, Dr. Cole described plaintiff as having "long-standing chronic low back pain

13 secondary to degenerative disc disease." (AR 324.) In April 2007, in one of the office visit

14 notes in which chronic pain syndrome is listed as one of plaintiff's chronic problems, Dr. Cole

15 indicated that she refilled plaintiff's chronic pain medication for her chronic degenerative disc

16 disease. (AR 283.) Similarly, in a July 2007 full dictation of one of the office visit notes cited

17 by plaintiff, Dr. Mohanakumar specifically described plaintiff's chronic pain as "due to

18 degenerative disc disease." (AR 271.) Further, the ALJ's decision can be read as

19 considering plaintiff's pain as a symptom of her degenerative disc disease. (*See* AR 21-22,

20 24-25.)[1]

21

22      [1] The Court acknowledges that, in a March 22, 2007 note, Dr. Cole listed back pain as an "[a]ssociated symptom[]" of the back problem and then separately listed chronic pain syndrome

01    Moreover, a diagnosis alone is not sufficient to establish a severe impairment.   Instead,

02  a claimant must show that her medically determinable impairments are severe.   20 C.F.R. §§

03  404.1520(c), 416.920(c).   In this case, plaintiff has not demonstrated the existence of a chronic

04  pain syndrome significantly limiting her ability to perform basic work activities.   For this

05  reason, and for the reasons described above, plaintiff fails to demonstrate reversible error with

06  respect to chronic pain.

07                                         Step Four

08    The ALJ found plaintiff able to perform her past relevant work as a motel maid or

09  cleaner as generally performed in the national economy and, therefore, not disabled at step four.

10  Plaintiff argues that she did not have qualifying past relevant work as a motel maid/cleaner and

11  that the ALJ misidentified her work as falling in that category.

12  A.    Past Relevant Work

13    Plaintiff bears the burden of showing she does not have the capacity to engage in past

14  relevant work.   Past relevant work is work (1) performed within the past fifteen years, (2)

15  constituting substantial gainful activity (SGA), and (3) lasting long enough for the individual to

16  have learned how to perform the work.   20 C.F.R. §§ 404.1560(b)(1), 404.1565(a),

17  416.960(b)(1), 416.965(a).

18    SGA "is work done for pay or profit that involves significant mental or physical

19  activities." *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001) (citing 20 C.F.R. §§

20  404.1571-404.1572 & 416.971-416.975).   For the years 1990 through 1999, average earnings

21

22  as a chronic problem. (AR 284.)   However, the record as a whole provides substantial evidence
    to support the Commissioner's argument and the ALJ's findings.

01 of more than $500.00 per month ordinarily show that work is SGA, while average monthly

02 earnings below $300.00 generally show a claimant has not engaged in SGA. *See* 20 C.F.R.

03 §§ 404.1574(b), 416.974(b). However, earnings are a presumptive, not a conclusive sign of

04 whether a job constitutes SGA. *Lewis*, 236 F.3d at 515. The presumption arising from low

05 earnings shifts the step-four burden from the claimant to the Commissioner. *Id.* "Without the

06 presumption, the claimant must produce evidence that he or she has not engaged in substantial

07 gainful activity; if there is no such evidence, the ALJ may find that the claimant has engaged in

08 such work. With the presumption, the claimant has carried his or her burden unless the ALJ

09 points to substantial evidence, aside from earnings, that the claimant has engaged in substantial

10 gainful activity." *Id.* (noting relevant factors pursuant to the regulations, including "the nature

11 of the claimant's work, how well the claimant does the work, if the work is done under special

12 conditions, if the claimant is selfemployed [sic], and the amount of time the claimant spends at

13 work.") (citing 20 C.F.R. §§ 404.1573, 416.973).

14       Plaintiff argues that substantial evidence does not support the ALJ's implicit finding

15 that she worked as a motel maid/cleaner at the SGA level. Plaintiff's "Work History Report"

16 reflects that she worked as a maid at the White Rock Motel June through September 1998 and

17 as a laborer for Labor Ready July 1997 through January 1998. (AR 83.) Her official earnings

18 record shows the following earnings for 1998: $117.00 from Synadyne II, Inc.; $781.00 from

19 Guzman Enterprises, Inc.; and $1172.06 from Labor Ready, Inc. (AR 147-48.) She asserts

20 that it is probable that the $1172.06 does not represent wages from her work as a maid, but,

21 rather, from Labor Ready where she reported that she worked as a laborer for one month in

22 1998. She further asserts that, regardless which of these employers represents wages from

01 White Rock Motel, her four months of earnings would not have reached the presumptive level

02 of SGA.  Plaintiff adds that her work history report is clearly incorrect in that, although her

03 earnings totaled only $2070.06 in 1998, she reported that she earned $5.50 per hour, working

04 six hours a day, seven days a week at the hotel for some four months, which should have

05 resulted in an income of approximately $4000.00.  (AR 87, 147-48.)  Plaintiff asserts that the

06 ALJ did not resolve any conflict in the evidence on this issue and that any attempt by the

07 Commissioner to do so now would constitute an improper post hoc rationalization.

08 The Commissioner asserts that any error at step four would be harmless given that the

09 ALJ also found plaintiff could perform other work in the national economy at step five.  *See*

10 *Stout*, 454 F.3d at 1055.  He further rejects that any error exists.  The Commissioner contends

11 that plaintiff's Labor Ready earnings from 1998 are most feasibly those stemming from her

12 work as a maid; noting plaintiff's report that she worked for Labor Ready for seven months in

13 1997 through January 1998, but the absence of any reported Labor Ready earnings in 1997.

14 (AR 83, 147.)  He asserts that the totals earned indicate plaintiff performed that job for at least

15 thirty days and that the record suggests she performed work at SGA levels.  The Commissioner

16 contends that plaintiff's work history report is inaccurate as to the wages, hours worked, and

17 length of time employed as it fails to conform with the earnings report, and that plaintiff failed

18 to meet her burden of showing inability to perform her past relevant work as identified by the

19 ALJ.

20 In reply, plaintiff asserts that, even assuming she earned the $1172.06 during her work

21 as a maid, she would have had to have worked under 2.34 months in 1998 to have

22 presumptively worked at the SGA level.  She describes the Commissioner as apparently

01 suggesting as an improper post hoc rationalization that the Court rule both that her report of

02 working four months at the motel was not credible and that her work at the motel was SGA.

03      The ALJ's step four finding consisted of the following:

> 04 The claimant worked as a motel maid/cleaner, which the Dictionary of Occupational Titles classifies as requiring a light level of exertion and entailing
> 05 unskilled work (#323.687-014, SVP 2). In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find the
> 06 claimant is able to perform it as generally performed.

07 (AR 27.) The ALJ described this position as "past relevant work" (*id*.), without any further

08 discussion.

09      The ALJ did not call into question plaintiff's report as to the number of months she

10 worked as a maid. Taking as true her assertion that she worked in that position for four months

11 and assuming she earned the most substantial of her 1998 earnings – $1172.06 – in that

12 position, plaintiff would have earned approximately $293 per month – allowing a presumption

13 that this work did *not* constitute SGA. The ALJ pointed to no evidence, let alone substantial

14 evidence, supporting the conclusion that this work nonetheless rose to the level of SGA. *See*

15 *Lewis*, 236 F.3d at 515. Accordingly, on remand, the ALJ should either obtain further

16 information from plaintiff regarding her past work or explain his implicit finding that her past

17 work as a maid constituted SGA.

18 B.    Misidentification of Past Relevant Work

19      Plaintiff next argues that the ALJ misidentified her past relevant work as a maid. The

20 ALJ pointed to Dictionary of Occupational Titles (DOT) listing 323.687-014 (Cleaner,

21 Housekeeping; Maid), a job described as exertionally "light." Plaintiff argues that this listing

22 does not account for the demands of her motel cleaning job given that she lifted as much as fifty

pounds in that position. (*See* AR 87.)   She contends that her work involved the duties of both a Cleaner, Housekeeping and Laundry Worker II (DOT 361.685-018), the latter of which is an exertionally medium occupation.   *See* 20 C.F.R. §§ 404.1567(b)-(c), 414.967(b)-(c) (light work involves lifting no more than twenty pounds at a time, while medium work involves lifting no more than fifty pounds at a time).   Pointing to two Ninth Circuit Court of Appeals decisions, plaintiff asserts that the ALJ was not permitted to ignore the fifty-pound lifting demands of her past work.   *Valencia v. Heckler*, 751 F.2d 1082, 1086-87 (9th Cir. 1985) (Appeals Council erred in classifying a part of a claimant's past relevant work as light when the work considered as a whole required medium exertional ability: "Every occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act.") and *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1166-67 (9th Cir. 2008) (ALJ erred at step four in classifying an occupation according to its least demanding function).

In addition to asserting that any error would be harmless given the ALJ's step five finding, the Commissioner notes that the ALJ found plaintiff capable of performing her past relevant work as it is generally performed, not as she actually performed it.   (AR 27.)   In reply, plaintiff asserts the Commissioner's failure to distinguish *Valencia*, 751 F.2d at 1086-87, and *Carmickle*, 533 F.3d at 1166-67.   She avers an absence of a legal basis for holding that those cases apply only when the issue is whether a claimant can perform past relevant work as actually performed.

A claimant may be found not disabled at step four based on a determination that she can

perform past relevant work as it was actually performed or as it is generally performed in the national economy. SSR 82-61. An ALJ need not render "explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). Instead, the ALJ need only make a sufficient finding pursuant to the applicable regulations. *Id*. at 844-45. "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id*. at 845 (citing SSR 82-62). An ALJ may rely on two sources "to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41." *Id*. at 845. The DOT is generally considered the best source for determining how past relevant work is generally performed. *Id*. at 845-46.

In her work history report, plaintiff stated she "cleaned motel rooms and did laundry" as a maid, that the items she lifted and carried consisted of "mostly piles of laundry[,]" that the heaviest weight she lifted was fifty pounds, and that she "frequently," meaning from one third to two thirds of the workday, lifted less than ten pounds. (AR 87.) The ALJ did not take any testimony from plaintiff regarding this job and did not utilize the services of a VE. Nor does the decision contain a discussion of plaintiff's job duties. Instead, as reflected above, the ALJ stated that plaintiff worked as a motel maid/cleaner, classified in the DOT under job title 323.687-014 as requiring a light level of exertion and entailing unskilled work, and concluded: "In comparing the claimant's [RFC] with the physical and mental demands of this work, I find that the claimant is able to perform it as generally performed." (AR 27.)

01    The ALJ's decision contains the requisite findings – including plaintiff's RFC, the light,

02    unskilled nature of maid/cleaner work as defined in the DOT, and a conclusion that plaintiff

03    could perform that work as it is generally performed. (*See id*.) Nor are *Valencia* and

04    *Carmickle* on point. In *Valencia*, the Ninth Circuit held that an ALJ must first determine

05    whether a claimant can perform past relevant work and only thereafter is free to consider skills

06    the claimant developed in determining whether he or she can perform other work. 751 F.2d at

07    1087. The Court found impermissible the practice of parsing out a particular aspect of a past

08    job at step four and essentially reclassifying the job according to that aspect. *Id*. at 1086-87.

09    In that case, the ALJ focused on a tomato sorting duty where the claimant's past work as an

10    agricultural laborer involved many other tasks. *Id*. Similarly, in *Carmickle*, 533 F.3d at

11    1155, the Court found it was error to classify a position according to supervisory duties

12    comprising only twenty percent of the work. Here, there is no reason to believe the ALJ

13    selected out the cleaning portion of plaintiff's duties as a maid, while ignoring the

14    laundry-related demands. Instead, it fairly could be said that he looked at maid duties as they

15    are generally performed.

16    On the other hand, the Court finds the ALJ's minimal discussion of this issue troubling.

17    Ideally, the ALJ would have discussed the precise duties as described by plaintiff on the form,

18    questioned plaintiff regarding the position and resolved any ambiguities, and retained the

19    services of a VE, who could have testified regarding motel maid work as it is generally

20    performed. As such, the Court concludes that, on remand, the ALJ should conduct a more

21    thorough analysis of this issue.

22    / / /

<u>Step Five</u>

02        Utilizing the Medical-Vocational Guidelines ("guidelines" or "grid") as a framework,

03 the ALJ found plaintiff capable of performing other work at step five.   Plaintiff argues that the

04 ALJ should have called upon the services of a VE and that he improperly relied upon SSR

05 85-15 in reaching his decision.

06 A.    <u>Reliance on the Grids Without a VE</u>

07        An ALJ may rely on the grids to meet his burden at step five.   *Burkhart v. Bowen*, 856

08 F.2d 1335, 1340 (9th Cir. 1988).   "They may be used, however, 'only when the grids

09 accurately and completely describe the claimant's abilities and limitations.'"   *Id*.   (quoting

10 *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).   "When a claimant's non-exertional

11 limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by

12 the claimant's exertional limitations, the grids are inapplicable[]" and the testimony of a VE is

13 required.   *Id*. (quoting *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 577

14 (9th Cir. 1988)).   *Accord Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("[A]n ALJ is

15 required to seek the assistance of a vocational expert when the non-exertional limitations are at

16 a sufficient level of severity such as to make the grids inapplicable to the particular case.")

17        "[T]he fact that a non-exertional limitation is alleged does not automatically preclude

18 application of the grids. The ALJ should first determine if a claimant's non-exertional

19 limitations significantly limit the range of work permitted by his exertional limitations."

20 *Desrosiers*, 846 F.2d at 577 ("It is not necessary to permit a claimant to circumvent the

21 guidelines simply by alleging the existence of a non-exertional impairment, such as pain,

22 validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of

the guidelines.") *Accord Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) ("The regulations . . . explicitly provide for the evaluation of claimants asserting both exertional and nonexertional limitations. [20 C.F.R. Pt. 404, Subpt. P, App. 2] at § 200.00(e)."), *modified at* 794 F.2d 1348 (1986). "Nonexertional impairments may or may not significantly narrow the range of work a person can do." SSR 83-14. For example, in *Hoopai*, 499 F.3d at 1076-77, the Ninth Circuit found that substantial evidence supported the ALJ's conclusion that a claimant's depression, with evidence of various associated moderate limitations, was not a sufficiently severe non-exertional limitation prohibiting reliance on the grids without the assistance of a VE. In contrast, in *Tackett v. Apfel*, 180 F.3d 1094, 1103-04 (9th Cir. 1999), the Ninth Circuit found that a claimant's "need to shift, stand up, or walk around every 30 minutes [was] a significant non-exertional limitation not contemplated by the grids[]" and, therefore, that "mechanical application of the grids was inappropriate."

In this case, the ALJ found that plaintiff's "moderate mental limitations do not unduly reduce the capacity to perform [SGA,]" and that plaintiff's "limitations would not have a significant effect on [her] ability to perform unskilled work, which is the universe of work which is the subject of the Commissioner's [grids]." (AR 27-28.) The ALJ concluded: ". . . I find that [plaintiff's] occupational base for light <u>unskilled</u> work, <u>i.e.</u>, the universe of which the Guidelines take administrative notice, <u>has not been significantly eroded</u> by [her] nonexertional limitations. Reference to the guidelines is therefore permissible." (AR 29; emphasis in original.)

Plaintiff avers that, assuming as true the ALJ's own RFC assessment, he was required to obtain VE testimony. Plaintiff concedes that a restriction to "simple" work does not require

01  the testimony of a VE given that unskilled work is defined in terms of simple duties.  *See* 20

02  C.F.R. §§ 404.1568(a) (unskilled work is work "which needs little or no judgment to do simple

03  duties that can be learned on the job in a short period of time.")   She argues that a restriction to

04  repetitive work, on the other hand, necessitates the testimony of a VE.   In support, plaintiff

05  points primarily to an unpublished district court decision from Indiana in which the court

06  rejected an argument that "repetitive" was merely a reiteration of the term "simple."   (Dkt. 12,

07  Attach. 1 at 4-5 (while by definition unskilled work is simple work, "[t]he same can not

08  necessarily be said of 'repetitive' work."))

09      Plaintiff likewise asserts that the restriction of working with only a few co-workers

10  necessitates the assistance of a VE.   She maintains the absence of any authority for the

11  proposition that unskilled light work involves working with only a few as opposed to many

12  co-workers, and asserts that, even if this restriction alone did not require VE testimony, it did

13  when considered cumulatively with her other non-exertional limitations.

14      Plaintiff also posits that the prohibition on "concentrated exposure to hazards

15  (machinery, heights, etc.)" (AR 27) necessitated VE testimony when considered in combination

16  with her other non-exertional limitations.   She asserts that many unskilled, light jobs exist in

17  industrial and other work settings where machinery is common and that, without a VE, the ALJ

18  had no way of knowing how many jobs would remain with this restriction.   *See* 20 C.F.R. §§

19  404.1568(a), 416.968(a) ("Unskilled work is work which needs little or no judgment to do

20  simple duties that can be learned on the job in a short period of time. The job may or may not

21  require considerable strength. For example, we consider jobs unskilled if the primary work

22  duties are handling, feeding and offbearing (that is, placing or removing materials from

01 *machines* which are automatic or operated by others), or *machine tending*, and a person can

02 usually learn to do the job in 30 days, and little specific vocational preparation and judgment are

03 needed. A person does not gain work skills by doing unskilled jobs.") (emphasis added).

04       Finally, plaintiff criticizes the ALJ's reliance on *Hoopai*, asserting nothing in that

05 decision provides that VE testimony is not required if individually or cumulatively a claimant is

06 restricted to a range of unskilled light work with restrictions to repetitive tasks, interaction with

07 only a few co-workers, and a prohibition on concentrated exposure to hazards.   She deems her

08 non-exertional limitations significant and maintains that the Court should order the ALJ to call

09 a VE on remand.

10       The Commissioner contends that repetition is clearly contemplated within the definition

11 of unskilled work.  *See* 20 C.F.R. §§ 404.1568(a), 416.968(a) (describing work where the

12 "primary work duties are handling, feeding and offbearing (that is, placing or removing

13 materials from machines which are automatic or operated by others) . . .").  He notes this

14 Court's rejection of plaintiff's argument in a different case, wherein the Court found that

15 "[s]imple, repetitive tasks of an unskilled nature are certainly encompassed in the definition of

16 unskilled work."  *O'Dair v. Barnhart*, No. C05-0131-TSZ (Dkt. 15 at 5-6 and Dkt. 19.)  *See*

17 *also Ortiz v. Sec'y of Health & Human Svcs.*, 890 F.2d 520, 526 (1st Cir. 1989) (affirming the

18 ALJ's reliance on the grids as a framework where "the claimant was capable of engaging in

19 unskilled, routine, repetitive work on a sustained basis.")

20       The Commissioner denies that the restriction of working with a supervisor and a few

21 coworkers constitutes a significant and sufficiently severe limitation precluding reliance on the

22 grids.   He contends that here, as in *Hoopai*, 499 F.3d at 1076-77, the record supports the ALJ's

finding that plaintiff's mental impairments did not result in sufficiently severe non-exertional

limitations requiring the use of a VE.   The Commissioner recounts the ALJ's assessment of

treatment notes and psychological evaluations in the record, including the opinions of State

agency reviewing consultants Drs. Brown and Clifford that plaintiff could "interact with a

supervisor and a few co-workers, as evidenced by her ability to interact appropriately with

medical providers and staff."   (AR 24; citing AR 153 (also noting that plaintiff "is able to care

for her two young children and has friends with whom she has daily contact."))

The Commissioner also rejects the contention that a limitation on avoiding concentrated

exposure to hazards requires a VE.   He points to SSR 83-14, which states: "[F]unctional ability

may not be impaired by an environmental restriction (e.g., a person may be able to do anything

so long as he or she is not near dangerous moving machinery, on unprotected elevations, or in

contact with certain substances to which he or she is allergic)."   The Commissioner notes that

plaintiff was not precluded from any exposure to hazards, only concentrated exposure, and

asserts that the ALJ's conclusion that this limitation had very little effect on the exertional

occupational base was reasonable.

In reply, plaintiff asserts that there is nothing intrinsically repetitive about unskilled

work, and notes that while the term repetitive does not occur in the definition of unskilled work,

it does appear in the definition of semi-skilled work.   20 C.F.R. §§ 404.1568(b), 416.968(b)

("A job may be classified as semi-skilled where coordination and dexterity are necessary, as

when hands or feet must be moved quickly to do repetitive tasks.") Plaintiff also points to the

DOT, noting that, for example, while the unskilled position of Cleaner, Housekeeping requires

"[p]erforming REPETITIVE or short-cycle work", the unskilled position of Cashier II does not.

01    (Dkt. 14-2 (attaching descriptions for DOT 211.462-010 (Cashier II) and 323.687-014

02    (Cleaner, Housekeeping).)   She asserts that, without a VE, the ALJ had no way of knowing

03    how many unskilled repetitive light jobs remained after excluding non-repetitive unskilled light

04    jobs.   Similarly, plaintiff asserts that many unskilled jobs, such as assembly work, are

05    performed in environments with more than a few co-workers.   Plaintiff notes that the ALJ

06    found she could not be exposed to all types of machinery, not just "dangerous moving

07    machinery" as cited in SSR 83-14.   She further argues that the portion of SSR 83-14 discussing

08    light work actually supports her position, in that it compares, for example, an individual with a

09    severe visual impairment and individuals with restrictions having little or no effect on the

10    unskilled light occupational base, such as a need to avoid concentrated exposure to feathers, and

11    states: "Where nonexertional limitations or restrictions within the light work category are

12    between the examples above, a decisionmaker will often require the assistance of a VS [i.e., a

13    vocational expert]."   SSR 83-14.

14          The Court does not agree with plaintiff to the extent she is arguing that a VE is

15    necessarily required because some unskilled light jobs require abilities prohibited by her RFC

16    limitations.   In fact, while plaintiff focuses on the example of a restriction on avoiding

17    concentrated exposure to feathers in SSR 83-14, she ignores that the ruling also describes

18    "inability to ascend or descend scaffolding, poles, and ropes; inability to crawl on hands and

19    knees; and inability to use the finger tips to sense the temperature or texture of an object[]" as

20    examples of limitations or restrictions having very little or no effect on the ability to perform

21    unskilled light work.   SSR 83-14.   In other words, the fact that some unskilled light jobs may

22    require these or other abilities does not preclude an ALJ's reliance on the grids.

01      Taken individually, it would not appear that any of the limitations targeted by plaintiff

02 would necessarily preclude the ALJ's reliance on the grids.   However, considering the

03 limitations cumulatively, plaintiff's point is well taken.   That is, considering limitations on

04 performing non-repetitive work, involving interaction with more than a few co-workers and

05 concentrated exposures to hazards, the occupational base for unskilled light work may well be

06 limited enough to necessitate the assistance of a VE.   The ALJ does not discuss the various

07 limitations in reaching the conclusion that plaintiff's non-exertional limitations do not preclude

08 reliance on the grids.   Had he explained his reasoning, it would be easier to determine whether

09 or not his conclusion was reasonable.   As such, on remand, the ALJ should discuss this issue in

10 detail and/or consult a VE.

11 B.   SSR 85-15

12      Plaintiff also argues that the ALJ erred at step five by relying on SSR 85-15.   She

13 points to Ninth Circuit cases noting that SSR 85-15 "provides guidance only for cases in which

14 the claimant asserts 'solely non-exertional impairments.'" *Roberts v. Shalala*, 66 F.3d 179, 183

15 (9th Cir. 1995) (quoting SSR 85-15); *accord Sandgathe v. Chater*, 108 F.3d 978, 980-81 (9th

16 Cir. 1996).   The Commissioner denies that the ALJ relied on SSR 85-15, stating he specifically

17 noted his use of that ruling as a point of reference in assessing the significance and severity of

18 plaintiff's nonexertional limitations.   (AR 28-29.)

19      The ALJ stated that "[t]he correctness of the *Hoopai* holding, and the fact that

20 claimant's nonexertional limitations do not significantly limit the range of work contemplated

21 by the [grids] may be seen by reference to [SSR] 85-15."   (AR 28.)   He then quoted the

22 ruling's discussion of the demands of simple, unskilled work.   (*Id*. ("[U]nskilled jobs at all

levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for person[s] with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis."; "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.")) The ALJ thereafter stated: "While SSR 85-15 by its terms applies to solely non-exertional impairments, 'the considerations of mental functioning that relate to individuals with mental impairments alone would also be relevant to individuals suffering from exertional impairments as well as severe mental impairments.' *Franklin v. Apfel*, 8 F. Supp. 2d 227, 2[3]3 (W.D.N.Y. 1998)." (AR 29.) He concluded that plaintiff "retain[ed] the capacity to perform unskilled work as explicated by [SSR] 85-15." (*Id.*)

In both *Roberts*, 66 F.3d at 183, and *Sandgathe*, 108 F.3d 980-81, the Ninth Circuit rejected an argument that SSR 85-15 required an award of benefits given that the claimants in those cases asserted both exertional and nonexertional impairments. The ALJ's consideration of SSR 85-15 is distinguishable in its reference to the ruling's discussion of unskilled work and in the fact that he does not point to this ruling as requiring a particular conclusion. While this consideration may not constitute reversible error, the Court nonetheless has some concerns. First, the ALJ relied on a district court decision from New York criticizing the Ninth Circuit's ruling in *Roberts*. *See Franklin*, 8 F. Supp. 2d at 233 ("... *Roberts* ... seemed to rely upon the

fact that SSR 85-15 addressed persons with solely non-exertional impairments, but [failed to] explain[] why the same reasoning should not apply to applicants with a combination of exertional and non-exertional impairments.")   While the criticism may be reasonable, the ALJ should have more fully discussed the Ninth Circuit's position.   Second, the ALJ would have been better served by discussing plaintiff's various nonexertional limitations, as stated above. Accordingly, on remand, the ALJ should reconsider his discussion of SSR 85-15 in light of these concerns.

Physicians' Opinions

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).   Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons.  *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).   Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).   "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id*. at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) and *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984)).   However, "the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidenc*e in the record.'" *Andrews v. Shalala*, 53 F.3d 1035, 1041(9th Cir.1995) (quoting

01 *Magallanes*, 881 F.2d at 752 (emphasis in original)).

02 A.    Dr. Allison Cole

03         Plaintiff argues that the ALJ erroneously rejected the opinion of treating physician Dr.

04 Cole that she was limited to part-time work.   She points to a November 2005 Work Capacity

05 Form in which Dr. Cole recommended that plaintiff participate in zero to fifteen hours of "work

06 search activities and/or training a week[.]" (AR 337.)   Dr. Cole also stated on the form that

07 plaintiff had degenerative joint disease confirmed by x-ray, had been compliant with treatment,

08 that her condition was likely to last over a year, and that she had been unemployable since

09 December 2004.   (*Id.*)   Plaintiff asserts that, as a general rule, a claimant who cannot work

10 full-time at steps four and five is disabled.   *See* SSR 96-8p (defining RFC on a "regular and

11 continuing basis" as work "8 hours a day, for 5 days a week, or an equivalent work schedule.")

12 She argues that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Cole's

13 opinion as to part-time work.

14         The ALJ assessed the November 2005 form from Dr. Cole as follows:

15         I have considered Dr. Cole's statements in a Work Capacity Form, which
           indicated that the claimant was unemployable as of December 2004.   Although
16         Dr. Cole's opinion would ordinarily carry significant weight as a treating
           physician, in this case, her opinion is not supported by the record.   The
17         objective medical evidence only showed moderate and mild findings.
           Moreover, Dr. Cole's progress reports show that the claimant's symptoms had
18         lessened.   Given the evidence, little weight has been accorded to that statement
           by Dr. Cole.

19

20 (AR 26; internal citations to record omitted.)   The ALJ mentioned Dr. Cole in assessing

21 plaintiff's credibility, noting that she, along with other care providers, recommended increased

22 activity and weight loss.   (AR 25.)   The ALJ also stated elsewhere in his decision that the

objective medical evidence did not support plaintiff's claim and that: "If the claimant's symptoms were as limiting as she alleges, one would expect to see more serious objective findings than those detected here." (AR 24.)

Plaintiff contends that the ALJ's rejection of Dr. Cole's opinion on the ground that she had only mild to moderate degenerative disc disease is unreasonable given that Dr. Cole also accounted for her obesity. She points to SSR 02-1p as reflecting that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone[,]" as well as evidence in the record supporting her obesity (*see* AR 202, 259, 271, 469). She further contends that the ALJ made an erroneous assumption that severe back pain stems only from nerve root impingement due to an abnormality such as a herniated disc. Plaintiff asserts that the ALJ had no medical or legal basis to make that assumption regarding back pain, and contends that he should have obtained medical-expert testimony on this issue instead of "playing doctor." *See, e.g., Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (ALJ should not play doctor).

Plaintiff also asserts that the ALJ unreasonably disagreed with Dr. Cole because she recommended that plaintiff increase her activities and lose weight. Plaintiff states that just because a physician encourages a claimant to increase his or her activities does not mean the physician believes the claimant is capable of work, adding that exhortations to lose weight are especially problematic. *See* SSR 02-1p ("A treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment. . . .[T]he goals of treatment for obesity are generally modest, and treatment is often ineffective.")

However, as argued by the Commissioner, plaintiff fails to establish that the ALJ erred

01 in his assessment of the report from Dr. Cole. It should first be clarified that Dr. Cole did not

02 expressly opine that plaintiff was limited to no more than fifteen hours of work a week.

03 Instead, in agreeing that plaintiff's condition impacted her "ability to work, look for work or

04 attend training[,]" Dr. Cole recommended that plaintiff participate in "work search activities

05 and/or training" from zero to fifteen hours a week. (AR 337.) Also, the ALJ's specific

06 reasons for giving Dr. Cole's opinion little weight included the conclusion that the objective

07 medical evidence only showed moderate to mild findings and that Dr. Cole's progress notes

08 showed that her symptoms had lessened. (AR 26.)

09      Plaintiff does not counter the ALJ's reasoning as to a lessening of her symptoms

10 reflected in Dr. Cole's progress notes. An ALJ may properly reject an opinion that is

11 conclusory and inconsistent with the record. *See generally Meanel v. Apfel*, 172 F.3d 1111,

12 1113-14 (9th Cir. 1999); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).

13      Plaintiff fails in her attempt to criticize the reasoning as to contrary objective medical

14 evidence. Dr. Cole mentioned in the November 2005 form that part of plaintiff's treatment

15 plan included weight loss, but did not include obesity as a diagnosis on that report. (AR 337.)

16 In any event, assuming Dr. Cole based her opinion in part on plaintiff's obesity, the ALJ's

17 decision reflects his proper consideration of that condition. The ALJ found plaintiff's obesity

18 severe and stated that, in determining plaintiff's RFC as light, he "considered obesity in itself

19 and as possibly having some impact on her back condition (SSR 02-1p)." (AR 17, 24.)

20 Moreover, plaintiff does not support the contention that the ALJ made the above-described

21 erroneous assumption regarding back pain. Instead, he pointed to an absence of supporting

22 objective medical evidence, described objective medical evidence in the form of an MRI which

01 showed only moderate and mild findings, and cited case law in which courts pointed to an

02 absence of various objective findings, including evidence of neurological abnormalities or

03 deficits, spasm or weakness, and minimal x-ray findings.  (AR 24, 26; citing AR 338; cited

04 cases omitted.)

05     Finally, the ALJ did not reject Dr. Cole's opinions because Dr. Cole recommended that

06 plaintiff increase her activities and lose weight.   Instead, he considered this fact in assessing

07 plaintiff's credibility, pointing to Dr. Cole as one of several different care providers who

08 "advised only conservative measures for alleviating [plaintiff's] symptoms in addition to her

09 medications[,]" and stating that a "[t]reating source's advice to increase activity militates

10 against crediting credibility of complaints of disability."  (AR 24-25; cited cases omitted.)

11 Plaintiff does not demonstrate that the ALJ erred in considering evidence from Dr. Cole in this

12 respect.

13 B.     Physicians' Opinions as to Mental Condition

14     Plaintiff also challenges the ALJ's assessment of the record as it relates to her mental

15 condition.   She contends that the ALJ disagreed with examining psychiatrist Dr. David

16 Sandvik because he took into consideration her reaction to non-work stressors such as her

17 marriage and home life, and argues that the ALJ failed to understand that her ability to tolerate

18 stress outside the workplace was probative evidence of her ability to tolerate stress in the

19 workplace.  (*See* AR 23, 26, 213-16.)   Plaintiff contends that the ALJ unreasonably

20 disbelieved examining psychologist Dr. Rodger Meinz's finding that she was capable of at least

21 part-time work because she reportedly "put forth 'excellent effort'" during testing, and asserts

22 that the ALJ would have likely disparaged her credibility, or even alleged malingering, had she

01  not put forth such effort. (*See* AR 16, 180-82.) However, as argued by the Commissioner,

02  plaintiff fails to demonstrate error in the ALJ's treatment of Drs. Sandvik and Meinz.

03      The ALJ found Dr. Sandvik's assessment overall to support his mental RFC

04  determination and, therefore, gave it significant weight. (AR 26.) The only portions of the

05  assessment the ALJ did not credit was Dr. Sandvik's opinion that it did not appear likely

06  plaintiff could work consistently through a normal work day and the Global Assessment of

07  Functioning (GAF) rating of 55, indicating moderate symptoms. (AR 26, 215.) The ALJ

08  found those portions of the opinion not supported by Dr. Sandvik's evaluation, stating that "Dr.

09  Sandvik only surmised that there may be some difficulties with sustaining concentration . . ."

10  and ". . . cited situational factors, including her marriage and home life 'as an ongoing source of

11  stress', indicating that those stressors impacted the claimant rather than an underlying mental

12  condition." (AR 26.) The ALJ additionally pointed to testing results and observations of Dr.

13  Sandvik supportive of the RFC assessment. (*Id.*) Considering this reasoning as a whole,

14  plaintiff mischaracterizes the ALJ's assessment of Dr. Sandvik's opinion.

15      The ALJ gave little weight to the portion of Dr. Meinz's opinion finding her capable of

16  at least part-time work given that physician's assessment as a whole. (AR 26.) He stated:

17          Dr. Meinz opined that the claimant would benefit from working while dealing
            with a number of situational stressors in her life, including her husband's
18          incarceration and related financial problems. He described her as a very bright
            person, finding that she put forth "excellent effort" throughout testing and
19          persevered well when faced with a difficult task. Further, he found the
            claimant's complaints of depression not severe as shown by her ability to do
20          fairly well even when depressed (working two jobs, dealing with marital
            problems, and tending to her family). In determining the claimant's GAF, Dr.
21          Meinz gave a score of 60, indicating only moderate symptoms. He found the
            claimant did well with cognitive testing as shown by her ability to comprehend
22          above average verbal instructions, solve fairly complex math problems, and take

01    in information even when under stress.   Accordingly, I find the remainder of his
      assessment supports the mental functional capacity determined here and have
02    given it significant weight.

03   (*Id.*)   Again, considering this reasoning, plaintiff mischaracterizes the ALJ's assessment of Dr.

04   Meinz's opinion.

05          Plaintiff also asserts that, on remand, the ALJ should reconsider her mental condition in

06   light of the expanded record, including documents submitted to the Appeals Council.   The

07   parties dispute the rules surrounding the consideration of evidence submitted to the Appeals

08   Council.   As this Court has previously indicated, Ninth Circuit case law clearly supports the

09   proposition that evidence submitted to the Appeals Council becomes part of the administrative

10   record for the purposes of this Court's review and is considered pursuant to "sentence four" of

11   42 U.S.C. § 405(g), which does not require the showing of good cause and materiality required

12   by "sentence six" of that statute.  *See Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir.

13   2000); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *Ramirez v. Shalala*, 8 F.3d 1449,

14   1451-52 (9th Cir. 1993); *Anderson v. Barnhart*, No. C02-2174L, slip op. at 1-3 (W.D. Wash.

15   Nov. 21, 2003) (Dkt. 26); *Ramel v. Barnhart*, No. C05-1913-RSL-MAT, slip op. at 11-14

16   (W.D. Wash. Aug. 4, 2006) (Dkt. 18).

17          Plaintiff does not point to any particular information within the evidence submitted to

18   the Appeals Council that she contends reflects error in the ALJ's decision.   Therefore, it would

19   be appropriate to require the ALJ to consider this evidence only if plaintiff demonstrates an

20   error possibly implicating the ALJ's consideration of plaintiff's mental impairments.   For the

21   reasons described herein, plaintiff has not demonstrated any such error.   Therefore, the Court

22   notes only that the evidence submitted to the Appeals Council is now part of the record.

<u>Lay Witness Testimony</u>

02         Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

03   to work is competent evidence.   *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

04   The ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each

05   witness.   *See Smolen*, 80 F.3d at 1288-89 (finding rejection of testimony of family members

06   because, inter alia, they were "'understandably advocates, and biased'" amounted to

07   "wholesale dismissal of the testimony of all the witnesses as a group and therefore [did] not

08   qualify as a reason germane to each individual who testified.") (citing *Dodrill v. Shalala*, 12

09   F.3d 915, 918 (9th Cir. 1993)).   *Accord Lewis*, 236 F.3d at 511 ("[L]ay testimony as to a

10   claimant's symptoms is competent evidence that an ALJ must take into account, unless he or

11   she expressly determines to disregard such testimony and gives reasons germane to each

12   witness for doing so.")

13         Plaintiff challenges the ALJ's assessment of the testimony of her friend, Brian Bean.

14   (*See* AR 65-73, 120-28.)   The ALJ discussed this testimony as follows:

15         Mr. Bean's statements are consistent with the claimant's accounts of her
           symptoms.   However, as long time friends, their friendship would likely
16         influence his statements in an effort to help the claimant be found disabled.
           Accordingly, I have given his statements little weight.   In addition, this
17         testimony conflicts with weighted medical evidence. . . .   Material
           inconsistencies between claimant's testimony and other evidence in the record
18         are "germane" to discounting lay testimony.

19   (AR 27; cited cases omitted.)

20         Plaintiff points to the Ninth Circuit's ruling in *Smolen*, wherein the court stated that

21   "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her

22   testimony[,]" and that "[t]o the contrary, testimony from lay witnesses who see the claimant

01  every day is of particular value." 80 F.3d at 1289. She contends the ALJ's analysis in this

02  case is similarly defective. The Commissioner points to case law supporting both of the ALJ's

03  reasons for rejecting the lay witness testimony. *See Greger v. Barnhart*, 464 F.3d 968, 972

04  (9th Cir. 2006) (ALJ's consideration of lay witness' "'close relationship'" with claimant and

05  the possibility that the witness was "influenced by her desire to help" the claimant was a reason

06  properly germane to the witness); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)

07  (inconsistency with the medical evidence is germane reason to discredit lay witness testimony).

08      As noted by the Commissioner, in *Greger*, the Ninth Circuit found the ALJ's

09  consideration of a lay witness' "'close relationship'" with a claimant and the possibility that the

10  witness was "influenced by her desire to help" the claimant a reason properly germane to that

11  witness. 464 F.3d at 972. The Ninth Circuit has elsewhere held that "friends and family

12  members in a position to observe a claimant's symptoms and daily activities are competent to

13  testify as to her condition[,]" *Dodrill*, 12 F.3d at 918-19, and that the mere fact that a lay witness

14  is a family member is not a legitimate ground for rejecting testimony from that witness, *Smolen*,

15  80 F.3d at 1289. In *Smolen*, in rejecting reasoning describing family members as

16  "'understandably advocates, and biased[,]" the Ninth Circuit stated: "[T]he same could be said

17  of any family member who testified in any case." 80 F.3d at 1289.

18      Here, despite *Greger*, the Court finds the ALJ's reasoning as to Mr. Bean's friendship

19  with plaintiff troubling. That is, it would seem that the same reasoning – a likelihood that a

20  friendship could influence statements in an effort to help the claimant – could be said of any

21  friend. *Cf. Smolen*, 80 F.3d at 1289. The ALJ did provide a legitimate and germane reason –

22  inconsistency with the record – for according little weight to Mr. Bean's testimony. However,

he did not explain how the testimony conflicted with the record or cite to any conflicting medical evidence.   For these reasons, on remand, the ALJ should reconsider or at least further support his findings with respect to Mr. Bean.

Exhibit 2-F

Plaintiff asserts that the ALJ failed to note the most important aspect of Exhibit 2F – a Physical RFC Assessment (PRFCA) form.   (AR 155-62.)   Sean Roberts, a non-physician adjudicator employed by the State agency, completed the form in March 2005 and non-examining State agency physician Dr. Robert Hoskins "AFFIRMED" the assessment in August of that year.   (AR 155-62.)   Plaintiff describes Dr. Hoskins' involvement as "literally rubberstamp[ing] his concurrence" with Mr. Robert's conclusions.   (Dkt. 12 at 20.)   Plaintiff notes that, while the ALJ "adopted" Dr. Hoskins' opinions in Exhibit 2-F, he failed to acknowledge the absence of any independent medical analysis conducted by that physician. (AR 23-25.)   She contends that this was error pursuant to SSR 96-6p, which states:

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, *and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist*. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

SSR 96-6p (emphasis added).

The Commissioner disputes plaintiff's depiction of Dr. Hoskins as merely rubberstamping the form, noting Dr. Hoskins' signature followed the statement that he had

01 "REVIEWED ALL EVIDENCE OF FILE" and that "THE ASSESSMENT OF [SIC] IS

02 AFFIRMED AS WRITTEN[.]" (AR 155.)  The Commissioner asserts that plaintiff fails to

03 support her contention that Dr. Hoskins conducted no independent analysis or was required to

04 independently iterate that analysis.

05       In reply, plaintiff asserts that the real issue is the weight properly afforded this exhibit.

06 That is, plaintiff asserts that the opinions of non-examiners such as Dr. Hoskins "who do not

07 have a treatment relationship with the individual are weighed by stricter standards, based to a

08 greater degree on medical evidence, qualifications, and explanations for the opinions, than are

09 required of treating sources."  SSR 96-6p.  Therefore, plaintiff maintains, because Dr.

10 Hoskins provided no explanation for his adoption of the adjudicator's determinations, the

11 exhibit was owed less weight.

12       SSR 96-6p addresses the proper treatment of opinions of reviewing State agency

13 consultants and other program physicians and psychologists.  It does not discuss

14 non-physician adjudicators such as Mr. Roberts.  Nor does it reflect that a State agency

15 physician affirming the assessment of a non-physician adjudicator must provide independent

16 analysis.  Instead, SSR 96-6p indicates that a State agency physician's explanation for his or

17 her opinion is one of several different factors to consider in determining the weight to accord

18 that opinion.  Here, because the PRFCA reflects that Dr. Hoskins affirmed the assessment

19 contained within that document, plaintiff does not demonstrate reversible error in the ALJ's

20 reliance on the findings within that form.  *Cf. Dewey v. Astrue*, 509 F.3d 447, 448-50 (8th Cir.

21 2007) (ALJ mischaracterized PRFCA as having been performed by a physician where there

22 was no evidence to support that the opinion came from a physician).

<u>Credibility</u>

02          Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

03   reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

04   *See also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony

05   unreliable, an ALJ must render a credibility determination with sufficiently specific findings,

06   supported by substantial evidence.  "General findings are insufficient; rather, the ALJ must

07   identify what testimony is not credible and what evidence undermines the claimant's

08   complaints."  *Lester*, 81 F.3d at 834.  "We require the ALJ to build an accurate and logical

09   bridge from the evidence to her conclusions so that we may afford the claimant meaningful

10   review of the SSA's ultimate findings."  *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

11   "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

12   inconsistencies either in his testimony or between his testimony and his conduct, his daily

13   activities, his work record, and testimony from physicians and third parties concerning the

14   nature, severity, and effect of the symptoms of which he complains."  *Light v. Social Sec.*

15   *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

16          Plaintiff asserts that substantial evidence does not support the ALJ's adverse credibility

17   finding.  She contends that the alleged errors in the ALJ's evaluation of the medical evidence

18   and medical opinions undermine the credibility findings.

19          As argued by the Commissioner, this argument fails.  Plaintiff does not identify, nor

20   does the Court perceive, any particular errors in the ALJ's credibility assessment.  (*See* AR

21   23-25.)  Her argument hinges on errors in the ALJ's assessment of the medical record and

22   various medical opinions.  For the reasons described above, plaintiff does not demonstrate any

01 such error.   Instead, the ALJ's errors fell within his consideration of plaintiff's claim at steps

02 four and five, and in his consideration of Mr. Bean's lay witness testimony.   Because such

03 errors do not implicate the credibility assessment, there is no basis for directing the ALJ to

04 reconsider plaintiff's credibility.   However, the Court notes that the ALJ should reconsider

05 plaintiff's credibility if further review implicates the prior assessment.

06 ### **CONCLUSION**

07      For the reasons set forth above, this matter should be remanded for further proceedings.

08 A proposed order accompanies this Report and Recommendation.

09      DATED this <u>16th</u> day of April, 2009.

10                       <u>s/ Mary Alice Theiler</u>
                      United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22